Nos. 90,005
90,566

IN THE MATTER OF THE ESTATE OF EULA M. SOMERS, DECEASED. SHRINERS HOSPITALS FOR CHILDREN, a Colorado Corporation, SUSAN A. SMILEY, and KENT C. SOMERS, *Appellees/Cross-appellants*, v. FIRSTAR BANK, N.A., TRUSTEE OF THE EULA MARGARET SOMERS TESTAMENTARY TRUST, *Appellant/Cross-appellee.*

(89 P.3d 898)

Opinion filed May 14, 2004.

*Donald C. Ramsay,* of Stinson Morrison Hecker LLP, of Overland Park, argued the cause, and *Neil R. Shortlidge,* of the same firm, was with him on the briefs for appellant/cross-appellee.

*James R. Mueller,* of Slagle, Bernard & Gorman, of Kansas City, Missouri, argued the cause, and *Robert A. Stopperan,* of the same firm, was with him on the brief for appellees/cross appellants Susan A. Smiley and Kent C. Somers.

*James W. Benjamin,* of Benjamin & Loss, P.C., of Kansas City, Missouri, argued the cause, and *John M. Brigg,* of the same firm, was with him on the brief for appellee/cross-appellant Shriners Hospitals for Children.

The opinion of the court was delivered by

GERNON, J.: This appeal requires us to determine whether the trial court ruled properly when it partially distributed funds from a spendthrift trust at the request of each of the beneficiaries. The beneficiaries acted in concert, and none were or are under any incapacity.

## FACTS

Eula M. Somers died in 1956. She left a testamentary trust (Trust) for her grandchildren, Susan Somers (now Smiley), then age 7, and Kent Somers, then age 5 (hereinafter Grandchildren). The Trust was funded from the residuary estate of Eula Somers in

an amount of approximately $120,000. By January 2001, the value of the Trust had increased to approximately $3,500,000.

The payout provision of the Trust instrument states in Article X(b):

"I authorize and direct my Trustee to pay, from the Trust Estate, beginning August 25, 1966, or one year after my death, whichever is the later date, the sum of $100.00 per month each to my said granddaughter, SUSAN ANN SOMERS, and to my grandson, KENT CLIFFORD SOMERS, so long as she or he shall live or until my Trust Estate is exhausted. If either of my such grandchildren should die before or after such monthly payments begin and before the Trust Estate is exhausted, then such deceased grandchild shall have no further interest in or right to receive monthly payments accruing after the date of her or his death, from the Trust Estate. If both of such grandchildren should die before or after such monthly payments begin and before the Trust Estate is exhausted, then there shall be no monthly payments accruing after the date of the death of the survivor of my such grandchildren made from the Trust Estate, and the remainder of the Trust Estate, after payment of the expenses of the trust, shall be distributed and paid over to the SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, a Colorado Corporation, free of any trust and this trust shall terminate."

The Trust was originally placed with the Johnson County National Bank and Trust Company. Firstar Bank, N.A. (Firstar) is the successor to the original trustee and is the appellant/cross-appellee here.

The Shriners Hospitals for Children (Shriners) and the Grandchildren reached an agreement to terminate the Trust. They agreed that the Grandchildren would each receive a distribution of $150,000 from the Trust and that the remainder of the Trust assets would immediately be distributed to Shriners. Shriners agreed to continue the $100 monthly payments to the Grandchildren.

Firstar opposed the termination of the Trust. Shriners and the Grandchildren then filed a joint petition in district court asking that the Trust be terminated immediately. Each side filed a motion for summary judgment.

The district court denied the petition to terminate the Trust and the Grandchildren's request for individual distributions of $150,000. However, the district court concluded that it had equity jurisdiction and ordered an immediate, partial distribution of the

corpus of the Trust to Shriners, but required that $500,000 remain in the Trust to fund the annuity payments to the Grandchildren. The court further ordered that the attorney fees and expenses of the Grandchildren's attorneys be paid from the Shriners' distribution.

Firstar appealed. The Grandchildren and Shriners cross-appeal. We transferred the appeal to this court pursuant to K.S.A. 20-3018.

## SPENDTHRIFT PROVISION

The Grandchildren argue that the district court should have terminated the Trust because all of the beneficiaries agreed to the termination and the termination would not frustrate a material purpose of the Trust. On appeal, Shriners appears to adopt a different view than the Grandchildren, arguing that the district court properly resolved the issue by distributing a portion of the Trust to them. In contrast, Firstar argues that the district court properly concluded that it could not terminate the Trust.

A spendthrift trust is defined in *In re Estate of Sowers*, 1 Kan. App. 2d 675, 680, 574 P.2d 224 (1977), as "a trust created to provide a fund for the maintenance of a beneficiary and at the same time to secure the fund against his improvidence or incapacity. Provisions against alienation of the trust fund by the voluntary act of the beneficiary or by his creditors are its usual incidents. [Citation omitted.]"

Article X(d) of the Trust prohibits alienation by a voluntary act of the beneficiaries:

"During the entire duration of the trust and as to each and every share or part thereof, said grandchildren and each of them shall be without power, voluntarily or involuntarily, to sell, mortgage, pledge, hypothecate, assign, alienate, anticipate, transfer or convey any interest in this trust or property or the income therefrom until the same is actually paid or delivered into her or his hands, and no interest of my said granddaughter or grandson in, or claim to, this trust or any part thereof or any income therefrom shall be subject to the claims of her or his creditors or of anyone else, nor to judgment, levy, execution, sequestration, attachment, bankruptcy proceedings or other legal process, nor pass or descend by operation of law. If my said granddaughter or grandson shall attempt to transfer or in any manner affect her or his interest in this trust or the income therefrom by voluntary act or by operation of law, or in the event any attempt is made to levy on, garnish, attach or sequester any such interest in the income or principal or to subject the

same to the claims of creditors or others, the same shall be void and all payments and distributions to or for my said granddaughter or grandson, as the case may be, shall thereupon or thereafter, in the sole discretion of the Trustee, be made either to her or him personally, or be used by the Trustee for her or his support and maintenance."

The parties do not dispute that the Trust is a spendthrift trust. Thus, the question is whether a court can terminate a spendthrift trust at the request of the beneficiaries, who are all in agreement and competent to consent, if the settlor is not available to consent to the termination. This is an issue of first impression in Kansas, requiring the application and interpretation of the Kansas Uniform Trust Code (KUTC), K.S.A. 2003 Supp. 58a-101 *et seq.*, and the interpretation of the Trust. The interpretation of a statute and the legal effect of written documents are both questions of law over which an appellate court exercises de novo review. *In re Harris Testamentary Trust*, 275 Kan. 946, 951, 69 P.3d 1109 (2003); *In re Estate of Sanders*, 261 Kan. 176, 181, 929 P.2d 153 (1996).

The question as to whether the KUTC applies to a testamentary trust resulting from a death in 1956 is answered by K.S.A. 2003 Supp. 58a-1106(a)(3), which states:

"[T]his act applies to judicial proceedings concerning trusts commenced before its effective date unless the court finds that application of a particular provision of this act would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights .of the parties, in which case the particular provision of this act does not apply and the superseded law applies."

The parties do not claim that the application of the KUTC would prejudice their rights, so we must first look to the code to determine whether the Trust may be modified or terminated. The KUTC addresses modification and termination of a trust in K.S.A. 2003 Supp. 58a-410 through K.S.A. 2003 Supp. 58a-417.

K.S.A. 2003 Supp. 58a-410(a) states in part: "[A] trust terminates to the extent the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved, or the purposes of the trust have become unlawful, contrary to public policy, or impossible to achieve."

The pertinent provisions of K.S.A. 2003 Supp. 58a-411 provide:

"(a) A noncharitable irrevocable trust may be modified or terminated upon consent of the settlor and all qualified beneficiaries, even if the modification or termination is inconsistent with a material purpose of the trust. A settlor's power to consent to a trust's termination may be exercised by an agent under a power of attorney only to the extent expressly authorized by the power of attorney or the terms of the trust; by the settlor's conservator with the approval of the court supervising the conservatorship if an agent is not so authorized; or by the settlor's guardian with the approval of the court supervising the guardianship if an agent is not so authorized and a conservator has not been appointed.

"(b) A noncharitable irrevocable trust may be terminated upon consent of all of the qualified beneficiaries if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust. . . .

"(c) A spendthrift provision in the terms of the trust is presumed to constitute a material purpose of the trust."

The Grandchildren claim that the district court had the power to terminate the Trust with all of the beneficiaries' consent because the spendthrift provision is not a material purpose of the trust. They appear to raise two arguments in this regard. First, the Grandchildren argue that the spendthrift provision is not a material purpose because it is a small fraction of the entire trust. The Grandchildren cite no authority for their proposition that a spendthrift provision must apply to a substantial portion of the trust to be considered a material purpose. The material purposes of a trust are subject to the settlor's discretion, which is limited "only to the extent its purposes are lawful, not contrary to public policy, and possible to achieve." K.S.A. 2003 Supp. 58a-404. Accordingly, we find no merit in this argument.

For their second argument, the Grandchildren claim that an annuity could continue their lifetime payments, thereby continuing the material purpose of the trust after its termination. This argument overlooks the purpose of a spendthrift provision, which "restrains either voluntary or involuntary transfer of a beneficiary's interest." K.S.A. 2003 Supp. 58a-103(15). An annuity purchased by Shriners outside the confines of the trust is not protected from alienation or attachment by the annuitant's creditors. See K.S.A. 60-2304. The only way to ensure the protection of the spendthrift provision is for sufficient funds to remain in the Trust. Thus, Eula Somers' purpose to protect the trust assets from her grandchil-

dren's creditors cannot be accomplished by terminating the Trust and purchasing an annuity that would merely maintain the beneficiaries' lifetime payments.

The Grandchildren cite *Matter of Boright*, 377 N.W.2d 9 (Minn. 1985), in support of their proposition that purchasing an annuity would accomplish the purposes of the Trust. In *Boright*, the remainder beneficiaries sought distribution of the trust corpus before the lifetime beneficiary died. The lifetime beneficiary, who did not consent to the termination of the trust, was entitled to a distribution of $1,000 per month for the remainder of her life, with her distribution being protected by a spendthrift provision. Noting that the annuity payments from an insurer were not guaranteed by Minnesota law, the *Boright* court refused to terminate the trust. Instead, the *Boright* court terminated a portion of the $900,000 trust and distributed that portion to the remainder beneficiaries, reserving enough funds in the trust to continue payment of the lifetime beneficiary's annuity distribution from the trust. 377 N.W.2d at 13. The *Boright* decision does not support the Grandchildren's proposition. The *Boright* decision supports the district court's resolution of this matter.

It should be noted that K.S.A. 2003 Supp. 58a-411, by its express terms, applies to the modification or termination of a noncharitable trust. Clearly, this is a charitable trust as defined by K.S.A. 2003 Supp. 58a-103(3), which describes a "charitable trust" as "a trust, or portion of a trust, created for a charitable purpose described in subsection (a) of K.S.A. 2003 Supp. 58a-405, and amendments thereto." K.S.A. 2003 Supp. 58a-405(a) states: "A charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community." The parties do not dispute that this is a charitable trust. Thus, we must consider whether, under these facts, a charitable trust with a spendthrift provision for certain beneficiaries for their lives may be modified, terminated, or partially terminated.

When there is no law directly on point, Kansas courts turn to the Restatement of Trusts. *Sanders*, 261 Kan. at 183. The Restate-

ment of Trusts does not distinguish between charitable and non-charitable trusts. The Restatement (Second) of Trusts § 337 (1957) provides:

"(1) Except as stated in Subsection (2), if all of the beneficiaries of the trust consent and none of them is under an incapacity, they can compel the termination of the trust.

"(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination."

The Restatement (Second) of Trusts § 337, comment l, specifically proscribes the termination of spendthrift trusts, stating:

"If by the terms of the trust or by statute the interest of one or more of the beneficiaries is made inalienable by him (see §§ 152, 153), the trust will not be terminated while such inalienable interest still exists, although all of the beneficiaries desire to terminate it or one beneficiary acquires the whole beneficial interest and desires to terminate it."

The principles found in the Restatement are echoed by other trust authorities. Generally, the case law plainly acknowledges that the owner of property can do as he or she wishes with it. IV Scott on Trusts, § 337.3 (4th ed. 1989). Likewise, case law agrees that "the beneficiaries cannot compel the termination of the trust if its continuance is necessary to carry out the purposes of the trust." IV Scott on Trusts, § 337.2. However:

"Where the continuance of the trust of the whole of the trust property is not necessary to carry out a material purpose of the trust, and all the beneficiaries consent and none of them is under an incapacity, they can compel the termination of the trust as to a part of the property." IV Scott on Trusts, § 337.8.

IV Scott on Trusts, § 337.8 further states:

"The question often arises as to whether the court will terminate a trust where the only objection to its termination is that annuities are payable out of the trust estate. If the annuitants consent, or if their interests are fully protected, and if the termination of the trust would not defeat a material purpose of the settlor in creating the trust, the court will direct a partial termination of the trust. Thus in *Harlow v. Weld* [, 104 A. 832 (R.I. 1918),] it was held that where a testator directed that the estate should be kept together until the death of all of the annuitants the court might order a partial distribution of the estate, retaining a sufficient amount to secure the payment of the annuities, if all the annuitants consented. By the terms of the will the trustees were directed to pay the net income after payment of the annuities to the testator's widow and on her death

to his son for life and on the death of the son to his grandchildren. He expressly provided that the estate was to be kept together until after the death of every annuitant. The son died and later the widow died. There was one grandchild. The entire estate was worth over three million dollars and the annuities amounted to $5500. The court said that it was hardly conceivable that the testator if he had foreseen the situation would intentionally have directed that so large an estate should be kept together solely to secure the small annuities. Since the annuitants were all willing to waive the literal compliance with the language of the will, and since only their interests were adversely affected, the trust would be terminated in part."

Both the Restatement (Second) of Trusts and Scott on Trusts support a conclusion that the tenet from K.S.A. 58a-411 may be applied equally to charitable and noncharitable trusts. Thus, the beneficiaries are precluded from terminating the Trust while continuation of the Trust is necessary to achieve a material purpose of the Trust. K.S.A. 2003 Supp. 58a-411(c) does not make a spendthrift provision a material purpose under all circumstances. Rather, it raises a rebuttable presumption that the spendthrift provision is a material purpose. The Grandchildren, however, offer no evidence to rebut the presumption that the spendthrift provision is a material purpose of the trust. As a result, we find the spendthrift provision of the Trust to be a material purpose of the Trust. The Grandchildren's proposal that Shriners would purchase an annuity to continue their monthly payments does not satisfy the protections required by the spendthrift provision. Thus, termination of the trust would frustrate a material purpose of the Trust. The trial court did not err when it reached the same conclusion and refused to terminate the Trust.

Next, we must consider whether the trial court erred when it modified the Trust by distributing approximately $3,000,000 to Shriners before the death of both grandchildren. Shriners argues that the district court properly terminated and distributed a portion of the Trust to them. Firstar argues that the district court was precluded by law from terminating or partially distributing the Trust and had no equitable powers to grant a partial distribution to Shriners. The Grandchildren argue that the district court should have used its equitable powers to terminate the Trust rather than modify it and that the district court should have granted the

$300,000 distribution they requested from Shriners' portion of the Trust, which is not subject to the spendthrift provisions.

Resolution of this issue requires the interpretation of the KUTC as it applies to the Trust, both of which are questions of law. This court exercises unlimited review over questions of law. *In re Harris Testamentary Trust*, 275 Kan. at 951; *In re Estate of Sanders*, 261 Kan. at 181.

The KUTC allows greater flexibility regarding the modification of long-term trusts, as long as the objectives of the settlor may still be carried out. K.S.A. 2003 Supp. 58a-412 provides:

"(a) The court may modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention.

"(b) The court may modify the administrative terms of a trust if continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration."

K.S.A. 2003 Supp. 58a-412 gives the court authority to evaluate the circumstances of the trust and determine whether the settlor anticipated such circumstances. If the settlor did not anticipate the circumstances, the court can modify the trust in furtherance of the trust's purpose. The district court found that the dramatic growth in the Trust's corpus presented a "unique and unusual set of facts" justifying modification of the Trust. We agree.

In 2003, the Maine Supreme Court ruled in a case factually similar to the case before us. *University of Maine Found. v. Fleet Bank*, 817 A.2d 871 (Me. 2003). In *University of Maine Found.*, the Maine Supreme Court permitted the partial distribution from a trust to the remainder beneficiary, a charitable organization. 817 A.2d at 876. The trust granted certain life beneficiaries an annual payment not to exceed $5,000 each, subject to a spendthrift clause. When the trust corpus reached over $9,000,000, the remainder beneficiary offered to pay the three life beneficiaries $25,000 annually in return for terminating the trust. The life beneficiaries agreed, but the trustee rejected the proposal and refused to terminate the trust. The *University of Maine Found.* court refused to

terminate the trust based on its determination that the spendthrift provision was a material purpose of the trust and the settlor's purpose was to exclude the life beneficiaries from the management and control of the trust assets. 817 A.2d at 875. Nevertheless, the court granted a partial distribution of the trust's surplus corpus to the remainder beneficiary and required the trustee to retain sufficient assets to meet the trust's obligations to the life beneficiaries. 817 A.2d at 876-77. The court concluded that a partial distribution to the charity complied with the settlor's purposes for both the remainder beneficiary and the life beneficiaries and adequately protected the life beneficiaries' interests. 817 A.2d at 876.

The district court concluded that Eula Somers intended to provide for Shriners, that a partial distribution from the trust assets furthered her goal of providing for Shriners, and that the partial distribution was not detrimental to the payment of the Grandchildren's annuity. All of these considerations comport with the requirements of K.S.A. 2003 Supp. 58a-412. Although the district court relied on its equity jurisdiction to order the partial distribution to Shriners, the award is proper under K.S.A. 2003 Supp. 58a-412.

We conclude that the district court was correct in its finding that the growth of the trust and its present worth constituted a circumstance that was not anticipated by the settlor and that modification or a partial distribution of the trust assets furthers the purposes of the trust, to benefit Shriners. We are, therefore, in agreement with the finding and order of the trial court that the corpus of the trust be distributed to Shriners, with the exception of $500,000 to be kept in the trust to provide for the payments to the Grandchildren under the provision of the spendthrift clause.

The Grandchildren further argue that if the district court had authority to modify the Trust to distribute funds to Shriners, it should have modified the Trust to grant the $300,000 in distributions in accordance with their agreement with Shriners. The Grandchildren claim that the $300,000 distribution would not have affected the spendthrift portion of the Trust because it was intended to come from Shriners' remainder interest.

Unless a trust is ambiguous, the court looks to the four corners of the document to determine the legal effect of the document. See *In re Estate of Sanders*, 261 Kan. 176, 182, 929 P.2d 153 (1996) (noting that trusts are construed using the same rules as wills). A court cannot analyze a will by inferring a testator's intention and then construing the will to effectuate those intentions, however probable the intentions may seem. The court cannot rewrite a will in whole or in part to conform to a presumed intention. It is the court's duty to construe, not construct, the will. 261 Kan. at 182.

Eula Somers' will and the Trust do not provide for any cash distributions to the Grandchildren aside from the $100 monthly payments. Other than the distribution of Eula Somers' jewelry and some miscellaneous household items that were devised to Susan, there are no other provisions in the will authorizing distributions to the Grandchildren. Consequently, the district court had no power to authorize a distribution from the Trust that was not authorized by Eula Somers' will even though the beneficiaries consented to the distribution. Any lump sum payments made to the Grandchildren cannot come directly from the Trust. The record before us does not establish a contract between the Grandchildren and Shriners requiring any such payments, so the district court had no basis for ordering Shriners to pay a portion of its proceeds to the Grandchildren. The district court did not err when it denied the $300,000 distribution to the Grandchildren.

## ATTORNEY FEES

Firstar and Shriners argue that the district court erred when it granted the Grandchildren's request for attorney fees. Firstar and Shriners contend the action was not for the benefit of Eula Somers' estate or the Trust.

The Grandchildren argue that the award of attorney fees was proper, in accordance with statutory and case law, and that the fees were beneficial and necessary for the proper administration of the Trust.

Two issues are involved in the attorney fee part of this appeal: (1) Who should pay and (2) in what amount?

K.S.A. 2003 Supp. 58a-1004 provides:

"In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

Pursuant to K.S.A. 2003 Supp. 58a-1004, the court has discretion over an award of attorney fees. This court reviews the district court's order using an abuse of discretion standard. Judicial discretion is abused when no reasonable person would adopt the position taken by the district court. *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002).

While great deference is given a trial court in these matters, this court has stated that "appellate courts, as well as trial courts, are experts as to the reasonableness of attorneys' fees and may, in the interest of justice, fix counsel fees when in disagreement with views of the trial judge." *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 676, 443 P.2d 681 (1968); see *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 714, 366 P.2d 219 (1961); *Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 480-81, 163 P.2d 389 (1945).

The attorneys for the Grandchildren billed over 650 hours for six partners and three associates for the proceedings before the district court. Two partners billed 544.10 of these hours. In addition, expenses for computerized legal research totaled over $13,000. The total requested attorney fees and expenses at the district court level totaled $117,454.98. The trial judge allowed $111,149.93.

We agree with the conceptual framework that attorney fees "ordinarily are not properly allowed to counsel for the unsuccessful party." *Householter v. Householter*, 160 Kan. 614, 620, 164 P.2d 101 (1945). In some cases, however, it is difficult to define success or determine who won and who lost.

Here, Shriners and the Grandchildren agreed to modify or terminate the Trust. Shriners gained access to a large sum of money significantly sooner than it would have. The Grandchildren stood to gain a large lump sum payout while preserving the material purpose of the Trust calling for each of them to receive $100 per month for life. The trustee bank, Firstar, resisted the modification

because of its duty to carry out the terms of the instrument and the wishes of the settlor. But, also, Firstar stood to lose management fees should the Trust be terminated or reduced in corpus.

The trial court made a finding that the efforts of the Grandchildren's attorneys secured a favorable result for the Shriners' remainderman and clarified a controversy pending between the annuitants and remainderman and trustee.

The trial court further stated: "Whether the Court has made the correct decision in the case remains to be decided by our appellate court."

Kansas Rules of Professional Conduct 1.5 (2003 Kan. Ct. R. Annot. 362) states:

> "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent."

Although we do not consider this litigation complex or contentious in the legal culture that we observe on a daily basis, we will defer to the judgment of the district court regarding the amount of the fees at the trial level.

We conclude, however, that the fees should be divided equally and that Shriners should pay half and the Grandchildren should pay half.

The fees on appeal are a different matter. This court has carefully examined the motion for the allowance of fees by the attorneys for the Grandchildren. The total requested on appeal is $45,566.92, including professional fees and costs. The hours of professional services this firm is requesting total 273.9. The expenses requested total $849.42, including $247 for online computer research.

On one day, February 17, 2003, the firm sought to bill 17.7 hours of professional services, with a claim that three partners and a paralegal worked on the appeal that day. The amount billed for that day alone was $3,084.

Perhaps some of the time might be attributed to the fact that the firm was not from Kansas, but at least one of the firm partners has a Kansas license and is presumed to know Kansas law and appellate procedures.

We conclude that the amount of the attorney fees requested on appeal is unreasonable. We find that a reasonable amount of attorney fees for the appeal here would be $15,000 plus the expenses of $849.42. The Grandchildren shall be responsible for this amount.

Affirmed in part and reversed in part.