NOT DESIGNATED FOR PUBLICATION

No. 113,742

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

M.L.G.,
*Appellant*,

v.

M.M.H.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed February 5, 2016. Affirmed.

*M.L.G.*, appellant pro se.

*Darla Ottensmeier*, of Oskaloosa, for appellee.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

*Per Curiam*:  This is an appeal by the biological father from the district court's order dismissing his motion seeking parenting time with his minor child. The child's biological mother is not involved in this appeal. Father is incarcerated and has been since 2006. Although he was represented by counsel before the district court, he is acting pro se on appeal. In his brief, Father contends that the district court erred in multiple ways. Based on our review of the record and Kansas law, we find none of Father's arguments to be persuasive. Specifically, we conclude that Father consented to the appointment of a permanent custodian who has the right to determine any contact that he may have with the child. Thus, we affirm.

1

FACTS

On May 10, 2003, the minor child was born, and at some point in 2007, a Child in Need of Care (CINC) petition was filed in Leavenworth County District Court. On June 5, 2007, the district court adjudicated the child to be in need of care. In particular, the district court found that Father was incarcerated; Mother was struggling with substance abuse; and there was evidence of physical and emotional abuse directed toward the child.

Subsequently, Father consented to the appointment of his sister as the child's permanent custodian. The order approving the appointment was evidently filed with the district court on October 26, 2007. Although the order appointing the permanent custodian is not included in the record on appeal, it is quoted at length by the parties, and the pertinent terms are undisputed. The document included the following notice:

> "NOTICE TO PARENT: THIS IS AN IMPORTANT LEGAL DOCUMENT, WHEN YOU SIGN THIS RELINQUISHMENT, A PERMANENT CUSTODIAN WILL BE APPOINTED FOR YOUR CHILD. *THE PERMANENT CUSTODIAN SHALL EXERCISE ALL OF THE RIGHTS AND RESPONSIBILITIES OF A PARENT*, EXCEPT CONSENT TO ADOPTION OR AS LIMITED BY THE COURT. YOU ARE STILL RESPONSIBLE FOR PAYING CHILD SUPPORT." (Emphasis added.)

Moreover, in consenting to the appointment of a permanent custodian, Father represented that he understood the following:

> "I understand that I may be able to have some contact with my child, but only if the permanent custodian decides it is in the child's best interest and if the court allows contact.

> "I understand that unless the court orders differently, the permanent custodian has the right to make the following decisions about my child: the amount and type of contact I have with my child . . . .

2

"I understand that this consent is final.

"I understand *the permanent custodian will have full authority* and all the rights of a birth parent or legal guardian over the child, except the power to place the child for adoption and give consent to adoption, and as otherwise limited by the court." (Emphasis added.)

We note that this language mirrors that of the language contained in the Kansas Judicial Council's form for parental consent to appointment of permanent custodians. (http://www.kansasjudicialcouncil.org/184_Consent_App_Perm_Custodian.pdf).

After Father consented to the appointment of his sister as the child's permanent custodian, and after the district court approved the appointment, the CINC case was closed in Leavenworth County. Over the next 2 1/2 years, the permanent custodian permitted Father to have contact with his child. Although the parties agree that the permanent custodian has refused to allow the child to have any contact with Father since April 1, 2010, the parties dispute the reason for the termination.

On February 8, 2011, Father filed a motion in Leavenworth County District Court, seeking to reopen the CINC case so that he could request parenting time with the child. But the district court entered an order denying the motion on June 15, 2011. Father did not appeal that decision.

Nearly 2 years later, in December 2012, Father evidently filed a domestic case in Leavenworth County District Court against the permanent custodian, in which he sought parenting time with the child. On January 11, 2013, the district court dismissed that action as well and ordered Father to pay $500 in attorney fees. Once again, Father did not appeal.

On June 27, 2013, although no case was pending, Father filed a motion for parenting time in Jefferson County District Court. At the time, it appears that the child resided with the permanent custodian in Jefferson County. Thereafter, the district court appointed a guardian ad litem to represent the child.

On August 12, 2013, the permanent custodian filed a motion to dismiss, arguing that Father was "attempting to do in Jefferson County District Court what he has been unsuccessful in doing in Leavenworth County District Court . . . ." On September 24, 2013, the guardian ad litem submitted a report in which she recommended that the district court dismiss the motion because she believed Father was forum shopping in an attempt to supersede the two orders entered in Leavenworth County District Court. The guardian ad litem also noted that Father had voluntarily consented to appointment of his sister as permanent custodian of the child at the time of the CINC action and that the permanent custodian now had the right—subject to court approval—to determine what amount of contact, if any, Father should have with the child.

The district court subsequently appointed an attorney to represent Father on his motion. A few months later, on January 24, 2014, the district court held a hearing on the motion to dismiss, during which Father's attorney appeared on his behalf. At the time of the hearing, Father was still incarcerated with an earliest possible release date of June 9, 2017. At the conclusion of the hearing, the district court granted the permanent custodian's motion to dismiss and eventually entered a journal entry on September 2, 2014.

In the journal entry granting the motion to dismiss, the district court found that (1) the issues presented in Father's motion were res judicata because they were previously litigated in Leavenworth County District Court; and (2) Father did not state a claim upon which relief could be granted because "there were no limitations or conditions placed

4

upon [the permanent custodian's] rights and responsibilities" to determine whether it is in the best interests of the child to see her Father. Thereafter, Father filed a notice of appeal.

ANALYSIS

On appeal, Father presents several arguments. First, he contends that the Jefferson County District Court erred by finding that it did not have jurisdiction to hear his motion. Second, Father contends that the district court erred by finding his claims were barred by res judicata. Third, Father contends that the appointment of the permanent custodian in 2007 violated K.S.A. 2015 Supp. 38-2272 and his fundamental rights as a parent. Fourth, Father contends that the district court relied too heavily on the report submitted by the guardian ad litem. We consider his contentions in the order they are presented.

*Jurisdiction*

Initially, Father incorrectly asserts that the Jefferson County District Court found it lacked jurisdiction to hear his motion. A review of the record on appeal reveals that the district court never concluded that it was without jurisdiction to consider Father's motion. Perhaps Father is referencing to the two prior cases filed in Leavenworth County District Court, both of which appear to have been dismissed for a lack of jurisdiction. But Father did not appeal either of those decision, so the question of jurisdiction in those cases is not properly before this court.

*Res Judicata*

Father next argues that the district court improperly found that his claims were precluded by res judicata. This court has found that res judicata is comprised of two related doctrines:  (1) claim preclusion and (2) issue preclusion (collateral estoppel). *Knowles v. Fleetwood Motorhomes of California, Inc.*, 40 Kan. App. 2d 573, 577, 194 P.3d 38 (2008). In the present case, only claim preclusion is at issue.

Under Kansas law,

"'when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."'" *Stanfield v. Osborne Indus., Inc*., 263 Kan. 388, 397, 949 P.2d 602 (1997).

The applicability of res judicata is an issue of law over which appellate courts exercise de novo review. *Rhoten v. Dickson*, 290 Kan. 92, 106, 223 P.3d 786 (2010).

In *Cain v. Jacox*, 302 Kan. ___, 354 P.3d 1196, 1199 (2015), the Kansas Supreme Court recently examined the doctrine of res judicata in the context of child support and found that courts should "consider the substance of both the first and subsequent action and not merely their procedural form." 354 P.3d at 1199. Our Supreme Court concluded that res judicata's equitable

"framework neither favors nor disfavors the application of the rule in any particular case. It merely requires that before the doctrine is either invoked or rejected, a court must conduct a case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance of the case at hand." 354 P.3d at 1199.

Applying this analysis, we find that at least some of Father's claims are barred by res judicata. Most important, we find that any challenge to his consent to the appointment of the permanent custodian by the Leavenworth County District Court in 2007 is barred by res judicata because Father did not appeal from that decision. Furthermore, we do not find that the motion for parenting time filed by Father in Jefferson County is an appropriate procedure to utilize in an attempt to collaterally attack the Leavenworth County order appointing the permanent custodian.

6

At most, Father could attempt to seek parenting time with his child in Jefferson County, and he was allowed to do so. Not only did the Jefferson County District Court allow Father's motion to stand—evidently treating it as a petition—but it also appointed an attorney to represent him in addition to a guardian ad litem to represent the child. Ultimately, however, the district court concluded that as the permanent custodian, Father's sister has the authority to determine whether parenting time with Father is in the best interests of the child. Thus, we will consider whether the district court erred in reaching this conclusion.

*The Role of the Permanent Custodian*

Father recognizes in his brief that the consent to appointment of the permanent custodian he signed in 2007 stated in paragraph 8: "I understand that *I may be able to have some contact with my child*, **but** *only if the permanent custodian decides it is in the child's best interests* **and** *if the court allows the contact*." (Emphasis added.) The interpretation of statutes and the legal effect to be given to written documents are both questions of law over which we exercise unlimited review. *In re Estate of Somers*, 277 Kan. 761, Syl. ¶ 1, 89 P.3d 898 (2004).

We note that the language quoted above to be consistent with the Revised Kansas Code for Care of Children. K.S.A. 2015 Supp. 38-2272(c) provides that a permanent custodian appointed by a district court "stand[s] in loco parentis to the child and . . . possess[es] over the child all the rights of a legal guardian," except under limited circumstances not relevant to the present appeal. Moreover, we find that the language quoted above is nearly identical to that found in K.S.A. 2013 Supp. 38-2272(f)(5).

Accordingly, we find that based upon the consent to the appointment of his sister as the permanent custodian for the child—as well as the Leavenworth County District Court's subsequent approval of the appointment—that the permanent custodian has the

7

authority to decide whether contact with Father is in the child's best interests. We also note that even if the permanent custodian decides that contact with Father is in the child's best interests, such contact must also be allowed by the district court. Thus, we hold that the district court's conclusion was correct as a matter of law.

*Report of the Guardian Ad Litem*

Lastly, Father challenges the report submitted by the guardian ad litem. He contends that had the guardian ad litem been acting in the child's best interests, she would not have agreed with the permanent custodian's recommendation to dismiss his motion. However, it appears that the guardian ad litem appropriately pointed out that under the terms of the order of appointment, the permanent custodian had the right to determine whether contact with father was in the child's best interests. Furthermore, appellate courts do not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

We, therefore, conclude that the district court's order should be affirmed.

Affirmed.