

## In the
## Missouri Court of Appeals
### Western District

| | | |
|---|---|---|
| ANGELA K. HUDSON, ET AL., | ) | |
| | ) | |
| Appellants, | ) | WD77008 |
| | ) | |
| v. | ) | OPINION FILED:  August 26, 2014 |
| | ) | |
| UMB BANK, N.A., TRUSTEE OF A.B. | ) | |
| HUDSON TESTAMENTARY TRUST, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Kathleen A. Forsyth, Judge

Before Division Four:  Alok Ahuja, Chief Judge, Presiding, Cynthia L. Martin, Judge and
Randall R. Jackson, Special Judge

The lifetime income beneficiaries of four testamentary trusts appeal the trial

court's judgment in favor of the trustee in an action that sought to remove the trustee or

to modify the trusts to permit easier removal of the trustee.  The lifetime income

beneficiaries argue that the trial court erred: (1) in concluding that the trusts' principal

place of administration is Kansas requiring Kansas law to apply to the determination of

their claim seeking removal of the trustee; and (2) in concluding that the trusts are

charitable trusts supporting the entry of summary judgment in favor of the trustee on their claim seeking to modify the trusts. We affirm.

## Factual and Procedural Background

On February 6, 2008, A. B. Hudson ("Hudson") executed a Will in Kansas where Hudson lived. Among other things, the Will created four testamentary trusts, each to be funded in the amount of $1,500,000 on his death. Each trust designated one of Hudson's four grandchildren ("grandchildren")[1] as the lifetime income beneficiary. Each trust provided that upon the death of the lifetime income beneficiary the trust would terminate and the trust's remainder would be paid to Shriners Hospital for Crippled Children[2] ("Shriners") free of trust "exclusively for the charitable purposes" of the hospital. Each trust named UMB Bank, N.A.[3] ("UMB") "with an office and place of business in Topeka, Kansas" as trustee. Each trust provided that the trustee would have "all powers conferred upon trustees by the provisions of the Kansas Uniform Trustees' Powers Act."

Hudson died in mid-February, 2008, shortly after executing the Will. The Will was submitted to probate administration in Wabaunsee County, Kansas. Following probate administration, the testamentary trusts were funded in Kansas, and were initially managed in Kansas by Pat Lockerby ("Lockerby"), a UMB trust advisor. Lockerby worked under the direct supervision of Tami West Stratton ("Stratton") whose office is in Kansas. UMB later replaced Lockerby with Meg Armstrong ("Armstrong"), and named J.T. Trujillo ("Trujillo") as the portfolio manager for the trusts. Armstrong and Trujillo

---

[1] The grandchildren are Angela K. Hudson, Nichole Rothe, Nathan Rothe, and Rachele Rothe.
[2] Shriners was also the residuary beneficiary under Hudson's will.
[3] UMB was also named as a co-executor of Hudson's will along with Hudson's daughter, Michele Kahn.

2

work in Colorado and were named to their positions for the ease of the grandchildren who live in Colorado. Stratton continued to supervise Armstrong. The investment policies Trujillo employed as portfolio manager were primarily developed by higher level employees in UMB's Kansas City, Missouri office. Account statements for the trusts sent periodically to the grandchildren show UMB's address in Missouri.

At some point, the grandchildren grew dissatisfied with UMB as trustee, primarily because UMB would not adopt their investment requests and strategies. The grandchildren wanted to replace UMB with The Private Trust Co., N.A., and specifically wanted Dan Foley, who was in some manner associated with that firm, to manage the trust assets. The grandchildren asked UMB to resign as trustee. UMB refused.

The grandchildren filed a three-count petition in the probate division of the Circuit Court of Jackson County, Missouri. The petition named Shriners as an additional plaintiff, alleging that Shriners had been "joined in this action as a party necessary to the adjudication of the issues," and that Shriners "has no opposition to being joined in this action as a necessary party."[4] Count I sought to modify the trusts pursuant to section 456.4B-411[5] by adding a provision that would permit a majority of the income and remainder beneficiaries of any trust to remove the trustee with or without cause. Count II sought to remove UMB as trustee pursuant to section 456.7-706, and to replace UMB with another suitable trustee. Count III of the petition sought a declaration that UMB could not recover its attorney's fees in defending the lawsuit from the trusts.

---

[4] The attorney representing the grandchildren also purported to be the attorney of record for Shriners.
[5] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

The trial court entered summary judgment in favor of UMB on Count I of the petition, finding the trusts to be charitable trusts not eligible for modification under Kansas law.[6] Following a bench trial, the trial court entered judgment in favor of UMB on Count II of the petition, finding that Kansas law controlled the administration of the trusts and that the beneficiaries had not established a right under Kansas law to remove UMB as the trustee. The trial court also entered judgment in favor of UMB on Count III of the petition.

The grandchildren appeal the trial court's judgment on Counts I and II of the petition.

## Summary of Issues on Appeal

The grandchildren assert two points on appeal. First, they argue that the trial court erroneously entered judgment in favor of UMB on Count II of their petition because Missouri, not Kansas, is the principal place of administration of the trusts, and Missouri law permits removal of a trustee with the unanimous consent of all qualified beneficiaries. Second, they argue that the trial court erroneously entered summary judgment in favor of UMB on Count I of the petition because the trial court erroneously found the trusts to be charitable, when they are noncharitable and subject to modification under either Missouri or Kansas law with the unanimous consent of all qualified beneficiaries.

---

[6] The trial court's application of Kansas law to Count I of the petition despite the fact the claim sought to modify the trust pursuant to Missouri law is explained, *infra*.

4

**Point One--Judgment Denying Claim for Removal of UMB as Trustee**

*Standard of Review*

In a court tried case, we will not reverse the trial court's judgment unless "there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). To reverse the trial court's judgment, because it was against the weight of the evidence, we must have a firm belief that the judgment is wrong. *Id*. We view the evidence and any inferences in the light most favorable to the trial court's judgment. *Hightower v. Myers*, 304 S.W.3d 727, 732 (Mo. banc 2010). We are to affirm the trial court's judgment on any basis supported by the law and the facts of the case. *Ballard v. Ballard*, 77 S.W.3d 112, 118 (Mo. App. W.D. 2002).

*Analysis*

The trial court found that Kansas law controls the administration of the trusts, and that the grandchildren did not establish a right to remove UMB as trustee under Kansas law. The grandchildren argue that the trusts' principal place of administration is in Missouri, and that Missouri law permits removal of UMB as the trustee with the unanimous consent of all qualified beneficiaries. Resolution of this point on appeal requires us to determine the principal place of administration of the trusts.

"Principal place of administration" is defined at section 456.1-103(17), in pertinent part, as "the trustee's usual place of business where the records pertaining to the trust are kept." Section 456.2-202.1 provides that "[b]y accepting the trusteeship of a trust having its principal place of administration in this state . . . the trustee submits personally to the

5

jurisdiction of the courts of this State regarding the administration of the trust during any period that the principal place of administration is located in this state." UMB admitted the allegation in the grandchildren's petition that the principal place of administration of the trusts was in Missouri "pursuant to section 456.2-202.1." UMB also admitted as alleged in the petition that the principal place of administration of the trusts "as defined in section 456.1-103(17)" is Kansas City, Missouri. The trial court's judgment thus found that "[t]he fact that UMB's principal place of business is located in Jackson County, Missouri, qualifies Missouri as a principal place of administration for the purpose of this Court's exercise of jurisdiction to decide the issues raised" in the petition.

Despite this finding, the trial court also found that "the principal place of administration of the Trusts for choice of law purposes is Kansas," and that "Kansas law [thus] governs administrative matters, including removal of the trustee." The trial court based its conclusion on application of section 456.1-107, the "governing law" provision of the Uniform Trust Code ("U.T.C.") as adopted by Missouri. That statute provides:

> The meaning and effect of the terms of a trust are determined by:
>
> (1) the law of the jurisdiction designated in the terms [of the trust] . . . ; or
>
> (2) in the absence of a controlling designation in the terms of the trust, the law of the jurisdiction having the most significant relationship to the matter at issue.

The phrase "terms of the trust" is defined at section 456.1-103(27) as "the manifestation of the settlor's intent regarding a trust's provision as expressed in the trust instrument or as may be established by other evidence that would be admissible in a judicial

6

proceeding." The comment to section 103 of the U.T.C. provides that the phrase "terms of a trust" is not limited to the words used in a trust and also includes:

> Oral statements, the situation of the beneficiaries, the purposes of the trust, ***the circumstances under which the trust is to be administered***, and, to the extent the settlor was otherwise silent, rules of construction . . . .

Unif. Trust Code section 103(18) (amended 2005), 7C U.L.A. 419 cmt. (2006) (emphasis added).

The trial court found that Hudson did not designate the "governing law" he wanted to control the meaning and effect of the terms of his testamentary trusts as anticipated by section 456.1-107(1). The trial court thus turned to section 456.1-107(2), which provides that in the absence of a governing law designation, "the law of the jurisdiction having the most significant relationship ***to the matter at issue***" will control. (Emphasis added.) The comment to the U.T.C. explains that "the matter at issue" is a variable in assessing which jurisdiction's governing law should apply. "Usually, the law of the trust's principal place of administration will govern administrative matters and the law of the place having the most significant relationship to the trust's creation will govern the dispositive provisions." Unif. Trust Code section 107 (amended 2005), 7C U.L.A. 437 cmt. (2006).

The trial court reasoned that the "matter at issue" in Count II of the petition was an administrative matter since section 456.2-202.3 lists removal of a trustee among judicial proceedings involving a trust's administration. We agree with this conclusion, and in any event it is a conclusion that is not challenged on appeal. Given the comment to section 107 of the U.T.C., it follows, therefore, that the "law of the trust's principal place of administration" should govern the resolution of Count II of the petition. *Id*. UMB

7

admitted, and the trial court found, that the principal place of administration of the trusts for purposes of bestowing jurisdiction over UMB is Missouri, as the term is defined by section 456.1-103(17).

The trial court did not, however, apply Missouri law to resolve Count II of the petition. Instead, the trial court concluded that section 456.1-107(2) permitted it to disregard the statutory definition of "principal place of administration," and to instead determine the principal place of administration for purposes of resolving administrative matters based on which jurisdiction has the most "significant relationship" to administration of the trusts. The trial court then consulted the comment to the U.T.C. addressing factors impacting this determination. The U.T.C. counsels that the determination of the "principal place of administration," and thus of the jurisdiction whose governing law will usually control the resolution of administrative matters, requires analysis of which jurisdiction has the most "significant relationship" to the administration of the trusts.

> A trust's principal place of administration ordinarily will be the place where the trustee is located. Determining the principal place of administration becomes more difficult, however, . . . when a single institutional trustee has trust operations in more than one state. In such cases, other factors may become relevant, including the place where the trust records are kept or trust assets held, or in the case of an institutional trustee, the place where the trust officer responsible for supervising the account is located.

Unif. Trust Code section 108 (amended 2005), 7C U.L.A. 439 cmt. (2006).

The trial court's reliance on the comment to the U.T.C. to determine that Kansas was the principal place of administration of the trusts, and not Missouri as per section 456.1-103(17), erroneously failed to take into consideration a material difference between

8

the U.T.C. and Missouri's version of the U.T.C. The U.T.C. does not define "principal place of administration." *See* Unif. Trust Code section 103 (amended 2005), 7C U.L.A. 413-15 (2006). The comment to the U.T.C. explains that this was a purposeful choice.[7]

In stark contrast, the Missouri legislature defined the term "principal place of administration" when it adopted the U.T.C. in 2004. When a term is defined in a statute, "a court must give effect to the legislature's definition." *Short v. S. Union Co.*, 372 S.W.3d 520, 532 (Mo. App. W.D. 2012). The inclusion of a statutory definition of "principal place of administration" in Missouri's version of the U.T.C. renders it unnecessary and inappropriate to resort to the "significant relationship" test set forth in section 456.1-107(2) to determine a trust's principal place of administration. The trial court erroneously concluded otherwise.[8]

Though the trial court erroneously applied section 456.1-107(2) to override the definition of "principal place of administration" set forth in section 456.1-103(17), we are nonetheless bound to affirm the trial court's legal conclusion that Kansas law controls the resolution of administrative matters involving the trusts on any other grounds supported by the law and the facts. *McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo. banc 1996) (holding that an appellate court "is concerned primarily with reaching a correct result, and thus . . . need not agree with the reasoning of the trial court in order to affirm

---

[7] "Because of the difficult and variable situations sometimes involved, **the Uniform Trust Code does not attempt to further define principal place of administration**." Unif. Trust Code section 108 (amended 2005), 7C U.L.A. 439 cmt. (2006) (emphasis added).

[8] It is important to point out, however, that the significant relationship test described in section 456.1-107)(2) remains relevant to determine which jurisdiction's governing law should control the resolution of *dispositive* (in contrast to *administrative*) matters involving the trust, as "[u]sually . . . the law of the place having the most significant relationship to the trust's creation will govern the dispositive provisions." Unif. Trust Code section 107 (amended 2005), 7C U.L.A. 437 cmt. (2006).

9

the result").  We are able to do so in this case because the statutory definition for "principal place of administration" set forth in section 456.1-103(17) expressly provides that the definition controls "*unless [a place of administration is] otherwise designated by the terms of the trust as provided in section 456.1-108*."  (Emphasis added.)

Section 456.1-108 provides:

1.  Without precluding other means for establishing a sufficient connection with the designated jurisdiction, *terms of a trust designating the principal place of administration are valid and controlling* if:

. . . .

(2)  all or part of the administration occurs in the designated jurisdiction.

(Emphasis added.)  Here, although the trial court correctly found that Hudson did not designate the "governing law" to be applied to determine the meaning and effect of the terms of his trusts pursuant to section 456.1-107(1), the trial court failed to address the fact that Hudson designated the "place of administration" of his trusts pursuant to section 456.1-108.1.  "Designating the principal place of administration [as authorized by Section 108] should be distinguished from designating the law to determine the meaning and effect of the trusts terms, as authorized by Section 107."  Unif. Trust Code section 108 (amended 2005), 7C U.L.A. 440 cmt. (2006).

In the Will, Hudson expressly identified UMB "with an office and place of business in Topeka, Kansas" as the trustee.  Hudson thus unambiguously expressed his intent that the trustee *would be located in Kansas*.  Hudson's designation of the place of business for the trustee expresses the intent that the place of administration of the trusts would be Kansas.  This conclusion is reinforced by Hudson's directive in his Will that the

10

trustee should have "all powers conferred upon trustees by the provisions of the Kansas Uniform Trustees' Powers Act," an act that addressed the administration of trusts in Kansas prior to its repeal in 2002.[9] To conclude otherwise would render Hudson's directives about where the trustee would be located and whose laws would control the trustee's powers meaningless. "In determining the meaning of a trust provision, the paramount rule of construction is that the settlor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole." *First Nat'l Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 652 (Mo. 1962). In fact, Hudson's directives appear plainly consistent with the U.T.C., which observes that "[a] settlor expecting to name a trustee . . . with significant contacts in more than one state may eliminate possible uncertainty about the location of the trust's principal place of administration by specifying the jurisdiction in the terms of the trust." Unif. Trust Code section 108 (amended 2005), 7C U.L.A. 440 cmt. (2006).

Pursuant to section 456.1-108(2), Hudson's designation of Kansas as the place of administration for the trusts is "valid and controlling" and must be enforced if "all or part of the administration [of the trusts] occurs in [Kansas]." Here, the evidence plainly established that part of the administration of Hudson's testamentary trusts has at all times

---

[9] The attorney who drafted Hudson's Will testified that the reference to the Kansas Uniform Trustees' Powers Act was a mistaken carryover from earlier versions of Hudson's will, and should have been corrected to refer to the Kansas Uniform Trust Code. We need not address or determine whether the trust provision can be or should be reformed to correct this purported error. *But see Commerce Trust Co. v. Weed*, 318 S.W.2d 289 (Mo. 1958) (addressing that a testator may expressly tie a will or trust to law other than that existing on the date of its execution). For our purposes, regardless that a repealed act was referenced in the trust provisions in Hudson's Will, it is plain that Hudson was expressing the intent that his trusts should be administratively managed in accordance with Kansas law consistent with his intent to designate Kansas as the principal place of administration of the trusts.

11

occurred in Kansas. The trusts were formed in Kansas, were funded in Kansas, were initially managed in Kansas, and continue to be managed in part in Kansas.[10]

In light of the foregoing discussion, we conclude that given UMB's admission, Missouri was the "usual place of business [for UMB] where the records pertaining to the trust are kept," and would thus have been the principal place of administration of the trusts but for Hudson's contrary designation of the place of administration pursuant to section 456.1-108.1.[11] Section 456.1-103(17). We further conclude that because Hudson properly designated the place of administration of the trusts as Kansas pursuant to section 456.1-108.1, Kansas is the "governing law" applicable to resolve administrative matters relating to the trust, including issues involving removal of the trustee. The trial court thus correctly concluded that the principal place of administration of the trusts is Kansas for purposes of determining the governing law applicable to administrative matters at issue,

_____

[10] The trial court found that in naming Colorado employees to manage the day-to-day administration of the trusts, UMB attempted to change the principal place of administration of the trusts from Kansas to Colorado, an effort that was not legally effective because UMB failed to comply with K.S.A. 2013 Supp. 58a-108(d), which permits a trustee to change the principal place of administration of a trust under certain circumstances, but only if appropriate written notice is provided to the beneficiaries. This ruling has not been challenged on appeal. Though not strictly at issue here, we do express some reservation as to whether a trustee has the power to transfer the principal place of administration of a trust if the settlor has designated the principal place of administration. *See* Unif. Trust Code section 108 (amended 2005), 7C U.L.A. 440 cmt. (2006) (observing that "[t]he procedure for transfer [of trust administration] specified in this section applies only in the absence of a contrary provision in the terms of the trust. *See* Section 105").

[11] We recognize that UMB admitted in its answer to the grandchildren's petition that Kansas City, Jackson County, Missouri was the principal place of administration as defined by section 456.1-103(17), and that the trial court had personal jurisdiction over it pursuant to section 456.2-202.1. However, these admissions, which clearly constituted UMB's voluntary submission to the personal jurisdiction of the trial court in Missouri, were never relied on or cited by the grandchildren as controlling on the issue of the principal place of administration of the trusts for choice of law purposes. The trial court expressed the view at the commencement of trial that the principal place of administration of the trusts remained a factual issue in dispute, an assertion the grandchildren did not challenge. The parties then presented competing evidence on this contested point, which had the practical effect of trying the issue of the principal place of administration by implied, if not express, consent, notwithstanding UMB's admissions. *See, e.g., Smith v. City of St. Louis*, 395 S.W.3d 20, 25 (Mo. banc 2013). In any case, we would be reluctant to conclude that UMB's admissions could have the effect of negating Hudson's designation of the place of administration of the trusts, given the plain language of section 456.1-103(17) and section 456.1-108.1 requiring a trial court to honor a settlor's designation.

although it reached this conclusion for the wrong reasons. *McDermott*, 934 S.W.2d at 286.

We thus turn our attention to whether Kansas law permits the grandchildren to remove UMB as trustee based on the purported unanimous consent of all beneficiaries.[12] As an initial observation, the grandchildren's petition did not seek to remove UMB as trustee under Kansas law, and sought only to remove UMB pursuant to section 456.7-706.1(4). Section 456.7-706.1(4) does provide that a court *may* remove a trustee where "removal is requested by all of the qualified beneficiaries" if (a) "removal . . . best serves the interests of all of the beneficiaries; (b) removal . . . is not inconsistent with a material purpose of the trust; and (c) a suitable cotrustee or successor trustee is available and willing to serve."[13] However, as we have explained, section 456.7-706.1(4) is not the governing law. We must look to the counterpart of that statute under Kansas law. K.S.A. 58a-706(b)(4)[14] is that counterpart and makes no provision for the removal of a trustee based on the unanimous consent of all beneficiaries. Where section 456.7-706.1(4)(a-c) permits the unanimous consent of all qualified beneficiaries to trigger possible removal of

---

[12] UMB contests that Shriners consented to removing UMB as trustee. The trial court's judgment acknowledged, but did not resolve this dispute. Because we conclude that Kansas law does not permit beneficiaries to remove a trustee predicated on unanimous consent, we similarly find it unnecessary to determine whether Shriners' acquiescence to being named as a party plaintiff in the petition constitutes consent to removal of UMB as trustee.

[13] On this point, the trial court found that even if Missouri law applied to the grandchildren's claim to remove UMB as trustee, the grandchildren failed to introduce any evidence that The Private Trust Co., N.A. was "qualified to conduct trust business in this state," an express condition of finding that a cotrustee or successor trustee is a "suitable replacement" where a corporate trustee is being removed. Section 456.7-706.3(1). The grandchildren have not appealed this alternative basis for the trial court's judgment, which would be fatal to their first point on appeal had we determined that Missouri law applied to resolve administrative matters effecting the trusts. *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 590-91 (Mo. App. W.D. 2009) (holding that to establish grounds for reversal, an appellant must challenge all grounds on which the trial court ruled against it); *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that the failure to challenge an alternative basis for the trial court's finding or ruling is fatal to appeal).

[14] All statutory references are to the official bound volumes of the K.S.A. unless otherwise indicated.

13

a trustee, K.S.A. 58a-706(b)(4) requires "a substantial change in circumstances." The grandchildren admitted at oral argument that they have not alleged, and would be unable to establish, a "substantial change in circumstances" warranting UMB's removal as trustee pursuant to K.S.A. 58a-706(b)(4).

We are cognizant that the trial court did not address the plain language of K.S.A. 58a-706(b)(4) in rejecting Count II of the grandchildren's petition. Instead, the trial court circuitously found that Count II of the petition was an indirect attempt to modify the trusts under K.S.A. 58a-412. The trial court then found that the grandchildren did not prove the conditions to modification required by that statute: (i) the existence of circumstances not anticipated by the settlor and a need to modify the trust provisions to further the purpose of the trust; and (ii) that continuation of the trusts under their existing terms would "be impractical or wasteful or impair the trust's administration." K.S.A. 58a-412(a), (b). We need not determine whether the trial court correctly concluded that Count II of the petition was an indirect attempt to modify the trusts under K.S.A. 58a-412 given our conclusion that K.S.A. 58a-706(b)(4) does not authorize removal of a trustee based on unanimous consent of the beneficiaries. Though the trial court did not refer to K.S.A 58a-706(b)(4) in rejecting Count II of the petition, we are to affirm the trial court's judgment on any basis supported by the law and the facts. *McDermott*, 934 S.W.2d at 287.

The grandchildren's first point relied on is denied.

14

**Point Two--Summary Judgment Denying Claim Seeking to Modify Trusts**

*Standard of Review*

We review the grant of summary judgment *de novo*. *ITT Commercial Corp. v. Mid-American Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will uphold the trial court's grant of summary judgment "if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." *White v. Cole County*, 426 S.W.3d 27, 30 (Mo. App. W.D. 2014). We view the evidence and any inferences in the light most favorable to the non-movant. *ITT Commercial Corp.*, 854 S.W.2d at 376.

*Analysis*

The grandchildren's second point on appeal argues that the trial court erred in granting UMB's motion for summary judgment on Count I of its petition which sought to modify the testamentary trusts pursuant to section 456.4B-411 based on the unanimous consent of all beneficiaries. The modification would have added a provision to the trusts permitting removal of a trustee with or without cause with the consent of a majority of all beneficiaries. The trial court found that Hudson's testamentary trusts were charitable trusts and could not be modified with the unanimous consent of the beneficiaries under Kansas law.[15] The grandchildren argue that the characterization of the trusts as charitable trusts is legally erroneous, and that under either Missouri or Kansas law, the trusts could be modified with the unanimous consent of the beneficiaries.

---

[15] We explain the trial court's reliance on Kansas law, instead of section 456.4B-411, *infra*.

15

Before we can address the merits of this point on appeal, we have a duty to examine the finality of the trial court's judgment as we only have jurisdiction to review final judgments. *Steinmetz v. Mo. Highway & Transp. Com'n*, 645 S.W.2d 36, 38 (Mo. App. W.D. 1982). The post-trial written judgment refers to the trial court's earlier grant of UMB's motion for summary judgment on Count I of the petition. However, the trial court did not issue a written order granting summary judgment on Count I prior to trial on Counts II and III. Other than a brief mention in the transcript at trial, the court's references in the post-trial judgment are the only evidence in the record on appeal that summary judgment was earlier granted on Count I.

A final judgment can be derived from several orders which, when combined together, dispose of all the issues as to all parties and leave nothing for future determination. *RLI Ins. Co. v. S. Union Co.*, 341 S.W.3d 821, 828 (Mo. App. W.D. 2011). Under Rule 74.02, however, an order must be in writing to be valid. *Sangamon Assocs., Ltd. v. Carpenter 1985 Family P'ship, Ltd.*, 112 S.W.3d 112, 117 (Mo. App. W.D. 2003). Though no written order granting summary judgment was issued by the trial court prior to trial, the trial court's several references in its post-trial judgment to the fact of, and basis for, its earlier grant of summary judgment on Count I afford sufficient written findings in combination with the post-trial disposition of Counts II and III to form a final judgment. The references in the post-trial judgment confirm that the trial court granted summary judgment on Count I of the petition because it concluded that Hudson's

16

testamentary trusts were charitable and that Kansas law did not permit their modification notwithstanding the purported consent of all beneficiaries.[16]

The trial court explained in the post-trial judgment that when it entered summary judgment on Count I, it operated under the assumption that Missouri was the principal place of administration of the trusts given the grandchildren's assertion to this effect in the petition. The trial court explained, however, that "[b]ecause the relief sought [under Count I] was modification of the Trusts' terms, the Court determined that section 456.1-107(2) was applicable and used the totality of the circumstances approach to determine that Kansas was the State having the most significant relationship to the matter at issue and the appropriate choice of law for Count I." In effect, the trial court found modification of a trust to involve a dispositive (as opposed to an administrative) matter such that the law of the jurisdiction having the most significant relationship to the trust's creation should control resolution of the matter.[17] The trial court then explained that it granted UMB summary judgment on Count I of the petition because K.S.A. sections 58a-410 through 58a-417 do not permit modification of the trusts' terms, regardless the purported unanimous consent of the beneficiaries, because the trusts are charitable trusts.

---

[16] *See* footnote number 12.

[17] As previously noted, the U.T.C. provides that the "law of the place having the most significant relationship *to the trust's creation* will govern the dispositive provisions." Unif. Trust Code section 107 (amended 2005), 7C U.L.A. 437 cmt. (2006) (emphasis added). The grandchildren do not contest the trial court's conclusion that modification of a trust involves a dispositive (and not an administrative) matter, or the conclusion that pursuant to section 456.1-107(2), Kansas is the jurisdiction with the most significant relationship to the trust for dispositive matters because it is most connected to the trust's creation. As explained, *supra*, at footnote number 8, the "significant relationship" analysis required by section 456.1-107(2) remains relevant to determine governing law to resolve dispositive matters in the absence of a governing law designation by the settlor, though the same analysis is superseded by the statutory definition of "principal place of administration" when determining the governing law which controls resolution of administrative matters.

The grandchildren have not appealed the trial court's determination that Kansas law governs their right to modify the trusts, and seemingly acquiesce in this determination (notwithstanding their contrary assertion in their petition) as they argue on appeal that both Kansas and Missouri law would have permitted modification of the trusts, had they been characterized as noncharitable. Because the trial court plainly relied on Kansas law, however, to enter summary judgment in favor of UMB on Count I of the petition, we need only address whether the trial court's determination was legally erroneous under Kansas law.[18]

Under Kansas law, a charitable trust is defined as "a trust, or portion of a trust, created for a charitable purpose described in subsection (a) of K.S.A. 58a-405." K.S.A. 2013 Supp. 58a-103(3). K.S.A. 58a-405(a) provides that a "charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community." K.S.A. 58a-405(a). Here, there is no factual dispute that the remainder beneficiary of the testamentary trusts, Shriners, is a charitable beneficiary. There is no factual dispute that Hudson expressed his intent to distribute the remainder interest of each trust "free of trust" to Shriners to be used for charitable purposes. The grandchildren thus do not contest that the remainder interests of the trusts are charitable. They argue, however, that because the lifetime income beneficiary

---

[18] We nonetheless observe, *ex gratia*, that section 456.4B-411 plainly would not have authorized modification of the trusts in the manner requested by the grandchildren. Though that statute permits modification of a noncharitable trusts with consent of all "adult beneficiaries having the capacity to contract consent," it does so only to "modify the terms of a noncharitable irrevocable trust so as to reduce or eliminate the interests of some beneficiaries and increase those of others, change the times or amounts of payments and distributions to beneficiaries, or provide for termination of the trust at a time earlier or later than that specified by its terms." The statute makes no provision for modification of a trust to address removal of a trustee.

distributions from the trusts are noncharitable, the trusts are not charitable trusts as a matter of law.

The grandchildren cite *Obermeyer v. Bank of America, N.A.*, 140 S.W.3d 18 (Mo. banc 2004) in support of their position. However, their reliance on *Obermeyer* is misplaced given the trial court's uncontested determination that Kansas law controls the resolution of Count I of the petition. In any event, *Obermeyer* is not persuasive. The trust in *Obermeyer* provided income for the life of the settlor's nieces and nephews, with the remainder to be given to Washington University's Dental Alumni Development Fund free of trust. *Id*. at 20. When the last of the nieces and nephews died, Washington University no longer had the Dental Alumni Development Fund or a dental school, making it impossible to honor the settlor's specific intent. *Id*. The issue was whether the trust could be modified pursuant to the cy pres doctrine, a doctrine "based on the concerns of equity to protect and preserve charitable bequests." *Id*. at 22-23. Significantly, both parties agreed that the trust in question was charitable. *Id*. at 21-22. However, the Supreme Court neither analyzed nor questioned this characterization, opting instead to conclude that the cy pres doctrine applied to permit modification of the intended charitable gift whether or not it was a gift under the trust, or "free of trust" because it followed the trust's termination. *Id*. at 23. Contrary to the grandchildren's assertion, *Obermeyer* does not hold that a trust which directs noncharitable distributions to lifetime income beneficiaries cannot be a charitable trust.

The grandchildren fail to address a Kansas Supreme Court decision involving a trust that is strikingly similar to Hudson's testamentary trusts. In *In re Estate of Somers*,

19

89 P.3d 898 (Kan. 2004), the settlor created a testamentary trust for her grandchildren. *Id*. at 901. The trust terms provided that on the death of the settlor's grandchildren, the trust would terminate and Shriners Hospital would receive the remainder free from trust. *Id*. The Kansas Supreme Court held:

> Clearly, this is a charitable trust as defined by K.S.A. 2003 Supp. 58a-103(3), which describes a "charitable trust" as "a trust, or portion of a trust, created for a charitable purpose described in subsection (a) of K.S.A. 2003 Supp 58a-405, and amendments thereto." . . . The parties do not dispute that this is a charitable trust.

*Id*. at 903-04. Like the settlor's grandchildren in *Somers*, the grandchildren are the lifetime income beneficiaries of Hudson's testamentary trusts. The remainder of the grandchildren's trusts will also be paid to Shriners, a charitable organization, free of trust when each grandchild dies. In light of the holding in *Somers*, the trial court did not error in concluding that Hudson's trusts are charitable trusts.

K.S.A. 2013 Supp. 58a-411(b) provides that "[a] noncharitable irrevocable trust may be modified upon consent of all of the qualified beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust." By its plain terms, K.S.A. 2013 Supp. 58a-411(b) does not apply to charitable trusts. The court in *Somers* expressly held, in fact, that a prior, but not materially different version of K.S.A. 2013 Supp. 58a-411(b) "by its express terms, applies [only] to the modification or termination of a noncharitable trust."[19] 89 P.3d at 903-04.

---

[19] *Somers* did hold that although K.S.A. 2003 Supp. 58a-411, which is not materially different than the current version, applies only to modification or termination of noncharitable trusts, the RESTATEMENT (SECOND) OF TRUSTS remains good law to address when a charitable trust can be modified, terminated, or partially terminated, as the Restatement does not differentiate between charitable and noncharitable trusts. 89 P.3d at 904. The grandchildren did not claim in their petition or in response to UMB's motion for summary judgment,

The trial court did not err in entering summary judgment in favor of UMB on Count I of the petition because K.S.A. 2013 Supp. 58a-411 does not permit the modification of a charitable trust, notwithstanding the purported unanimous consent of all beneficiaries.

The grandchildren's second point relied on is denied.

**Conclusion**

We affirm.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

and do not argue on appeal, that the RESTATEMENT (SECOND) OF TRUSTS affords them the authority to modify the trusts, whether or not they are charitable, upon the unanimous consent of the beneficiaries. In any event, though the RESTATEMENT (SECOND) OF TRUSTS makes provision for *termination* of a trust with the consent of all beneficiaries, (section 337), it makes no provision for *modification* of a trust with the consent of all beneficiaries.