

# In the
# Missouri Court of Appeals
## Western District

KAREN L. FAY,

        **Appellant,**

v.

**LLOYD GRAFTON AND RONALD W. GRAFTON,**

        **Respondents.**

**WD78302**

**OPINION FILED:**

**November 17, 2015**

---

**Appeal from the Circuit Court of Linn County, Missouri
The Honorable Tracey A. Mason-White, Judge**

**Before Special Division:
James Edward Welsh, P.J., Gary D. Witt, J., and Andrea R. Vandeloecht, Sp. J.**

Karen L. Fay appeals the circuit court's judgment in favor of Lloyd Grafton on her Amended Petition to Disapprove the Wrongful Termination of an Irrevocable Trust. Fay contends that the circuit court erred (1) in approving Lloyd Grafton's revocation and then modification of the trust without requiring the consent of all beneficiaries of the trust; (2) in not removing Lloyd Grafton as trustee of the trust because he violated the interests of the beneficiaries, committed a breach of the trust, and violated his duty of loyalty and duty to inform; (3) in approving Lloyd Grafton's revocation of trust and the subsequent transfer of the shares of Lloyd Grafton, Inc., to himself without consideration of the "ascertainable standard" as

set forth in section 456.8-814, RSMo Cum. Supp. 2013; and (4) in not terminating all income and benefits to Lloyd Grafton and holding him subject to the no-contest clause of the trust. We affirm the circuit court's judgment.

The evidence established that Lloyd Grafton and his then wife, Dorothy J. Grafton, executed The Grafton Family Trust Agreement on January 9, 2003. The major assets of the trust agreement were shares of common stock in two Missouri corporations: Grafton Family Farms, Inc., and Lloyd Grafton, Inc. Lloyd Grafton and Dorothy Grafton were designated as the settlors and co-trustees of the trust. The trust stated that, in the event of the death of either trustee, then "the other designated Co-Trustee shall serve as the Sole Trustee."

The purpose of the trust was set forth in the trust and provided: "The purpose of this Trust Agreement is to maintain the assets of Lloyd Grafton, Inc., and Grafton Farms, Inc., as a single farming operation as long as financially reasonable, for the longest term permitted by law, unless terminated under Section 5." The trust set forth the "Dispositive Provisions During Lifetime of Settlors," which said:

> During the lifetime of Settlors, or either of them, the Trustee shall hold and administer the Trust Estate as follows:
>
> a. The shares of Grafton Farms, Inc., transferred by each Settlor to this Trust shall be held in separate trust for the benefit of each transferring Settlor and shall be administered according to the instructions set out at Section 10 of this Trust Agreement.
>
> b. All assets other than the shares of Grafton Farms, Inc., shall be held and administered as follows:
>
> (1) The net income shall be paid and distributed to or for the benefit of the Settlors, of [sic] the survivor of them.

2

(2) The Trustee may pay to or apply for the benefit of either or both Settlors all or any part of the principal as tahe (sic) Trustee may determine in its discretion.[1]

(3) In the event of the disability or impairment of either Settlor, the Trustee may pay to or apply for the benefit of either or both Settlors such part of the net income or principal, or neither, in the discretion of the Trustee.

Section 10 of the trust provided:

Any and all trusts created under this Trust Agreement shall be irrevocable, and Settlors, and each of them, expressly waive all rights and powers, whether alone or in conjunction with others, and regardless of when or from what source such powers have been acquired, to alter, amend, revoke, terminate the trusts or to amend or revoke any of the terms of this Trust Agreement, in whole or in part, except according to the provisions of Section 7(j) of this Trust Agreement.

The trust stated that the settlors have two children, Karen Fay and Ronald Grafton, and set forth provisions concerning how the trust estate would be held and administered upon the death of both settlors and how the trust estate shall be divided among Karen Fay and Ronald Grafton and among others if Karen Fay and Ronald Grafton are no longer living. The trust further provided direction about the trustee's duty to inform and report to "Qualified Beneficiaries"[2] about "the administration of the Trust and of the material facts necessary for them to protect their interests." The trust specifically stated, however, that the provisions regarding the duty to inform and report "are inapplicable as to notice to persons other than a surviving spouse so long as a surviving spouse is or may be entitled to receive income or principal distributions from the Trust, or holds any power of appointment therein, and where any or all Qualified Beneficiaries are the issue of the surviving spouse."

---

[1]Section 7, subsection (e), of the Trust provided: "The determination by the Trustee exercising discretion under this Trust shall be absolute, final and binding upon all persons then or thereafter interested in any trust or any interest in any trust created under this Trust Agreement."

[2]The trust defined "Qualified Beneficiary" as "a beneficiary, who, on the date of the beneficiary's qualification is determined: (1) to be a distributee of Trust income or principal; or (2) would be a distributee of Trust income or principal if the Trust terminated on that date."

Dorothy Grafton died on November 26, 2008, which left Lloyd Grafton as the sole trustee of the Grafton Family Trust. On January 17, 2013, Lloyd Grafton executed a Restatement of the Grafton Family Trust Agreement, which purported to revoke in its entirety the Grafton Family Trust Agreement dated January 9, 2003. Upon realizing that the Restatement may have been inappropriate, Lloyd Grafton executed an amendment to the Restatement of the Grafton Family Trust Agreement on May 1, 2013. Pursuant to the amendment, Lloyd Grafton reinstated all of the original terms of the original Grafton Family Trust Agreement and revoked in its entirety the Restatement of the Grafton Family Trust Agreement. On the same day that the amendment to the Restatement was executed, Lloyd Grafton, acting as Trustee of the Grafton Family Trust Agreement, transferred to himself in his individual capacity 7480 shares of common stock in Lloyd Grafton, Inc. Also, on that same day, Lloyd Grafton, as Trustee of the Grafton Family Trust Agreement, executed a Bill of Sale transferring to himself all assets in the Trust, which included "all personal property, farm machinery, implements equipment, household goods, furniture, fixtures and all purely personal property and all other property in said Trust" except for shares of common stock of Grafton Farms, Inc." Thereafter, he placed the shares of Lloyd Grafton, Inc., into the Lloyd Grafton Revocable Trust Agreement.

On April 24, 2013, Karen Fay filed a Verified Petition to Disapprove the Wrongful Termination of an Irrevocable Trust with the circuit court, seeking: (1) to disapprove the alleged modification of the trust agreement by Lloyd Grafton on January 9, 2003, (2) to remove Lloyd Grafton as trustee and appoint a successor trustee; and (3) a remedy for a breach of trust. On April 2, 2014, Fay filed an amended Verified Petition to Disapprove the Wrongful Termination of an Irrevocable Trust asserting the three counts mentioned above, one count for "Breach of Trust, True Contest and Attack" and 16 counts for conversion. Fay, however, dismissed 15 of the

4

conversion counts before trial. The circuit court held a two-day bench trial on October 21 and 22, 2014. On December 23, 2014, the circuit court entered judgment for Lloyd Grafton on all counts. Fay appeals.

Our review of this judge-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). We view the evidence and inferences in the light most favorable to the circuit court's judgment and disregard all contrary evidence and inferences. *Essex Contracting, Inc. v. Jefferson Cty.*, 277 S.W.3d 647, 652 (Mo. banc 2009). Where the issue is strictly a question of law, we apply *de novo* review. *Pearson*, 367 S.W.3d at 43. We give no deference to the circuit court's rulings on questions of law. *Id*. at 43-44.

In her first point on appeal, Fay contends that the circuit court erred in approving Lloyd Grafton's revocation and then modification of the trust without requiring the consent of all beneficiaries of the trust. She asserts that section 456.4A-411, RSMo Cum. Supp. 2013, and section 456.590, RSMo 2000, require the consent of all beneficiaries to terminate or modify an irrevocable trust or require a finding by the court that the rights of non-consenting beneficiaries were being protected.

While it is true that Lloyd Grafton attempted to revoke the trust by executing the Restatement of the Grafton Family Trust Agreement on January 17, 2013, the evidence established, and the circuit court found, that Lloyd Grafton realized that he lacked the power and authority to execute the Restatement, so he executed an amendment to the Restatement of the Grafton Family Trust Agreement on May 1, 2013. Pursuant to the amendment, Lloyd Grafton

5

reinstated all of the original terms of the original Grafton Family Trust Agreement and revoked in its entirety the Restatement of the Grafton Family Trust Agreement. The trust, therefore, was left intact as originally drafted and with no changes or amendments. As the circuit court found, an order disapproving the Restatement is not necessary because Lloyd Grafton's actions in revoking the Restatement were sufficient to reinstate the original trust without modification. Thus, because the trust was not modified or terminated, the consent of the beneficiaries was not required, and the court did not have to find that the rights of non-consenting beneficiaries were being protected.

In her second point on appeal, Fay asserts that the circuit court erred in not removing Lloyd Grafton as trustee of the trust because he violated the interests of the beneficiaries, committed a breach of the trust, and violated his duty of loyalty and duty to inform. Fay claims that, because Lloyd Grafton tried to revoke the trust and later transferred assets out of the trust, he violated sections 456.7-706, 456.8-801, 456.8-802, and 456.8-813, RSMo Cum. Supp. 2013.

First, to the extent that Fay argues that Lloyd Grafton should be removed as trustee of the trust because he attempted to revoke the trust by executing the Restatement of the Grafton Family Trust Agreement, her argument is without merit given that Lloyd Grafton reinstated all of the original terms of the original trust and revoked the Restatement when he filed the amendment to the Restatement. As we noted previously, the trust was left intact as originally drafted and with no changes or amendments. Thus, any contention that Lloyd Grafton as trustee of the trust violated the interests of the beneficiaries, committed a breach of the trust, and violated his duty of loyalty and duty to inform by revoking the trust by executing the Restatement is without merit.

6

Fay asserts, however, the fact that Lloyd Grafton later transferred assets of the trust to himself also establishes that he violated the interests of the beneficiaries, committed a breach of the trust, and violated his duty of loyalty and duty to inform. As noted by the circuit court in its judgment, Fay did not plead that Lloyd Grafton should be removed as Trustee because he removed assets from the Trust, and she did not request the court to amend the pleadings to conform to the evidence at the end of trial. The circuit court, however, made findings regarding Lloyd Grafton's removal of the assets from the trust and concluded that the trust gave Lloyd Grafton as trustee absolute discretion to pay all or part of the principal of the trust to himself as settlor. We agree.

Section 3 of the trust set forth the "Dispositive Provisions During Lifetime of Settlors," which said:

> During the lifetime of Settlors, *or either of them,* the Trustee shall hold and administer the Trust Estate as follows:
>
> a. The shares of Grafton Farms, Inc., transferred by each Settlor to this Trust shall be held in separate trust for the benefit of each transferring Settlor and shall be administered according to the instructions set out at Section 10 of this Trust Agreement.
>
> b. All assets other than the shares of Grafton Farms, Inc., shall be held and administered as follows:
>
> (1) The net income shall be paid and distributed to or for the benefit of the Settlors, of [sic] the survivor of them.
>
> (2) *The Trustee may pay to or apply for the benefit of either or both Settlors all or any part of the principal as tahe* [sic] *Trustee may determine in its discretion.*[3]

---

[3]We added the emphasis.

7

(3) In the event of the disability or impairment of either Settlor, the Trustee may pay to or apply for the benefit of either or both Settlors such part of the net income or principal, or neither, in the discretion of the Trustee.

Moreover, section 7, subsection (e), of the trust provided: "The determination by the Trustee exercising discretion under this Trust shall be absolute, final and binding upon all persons then or thereafter interested in any trust or any interest in any trust created under this Trust Agreement."

"It is well settled that the law allows a settlor to confer upon a trustee broad discretion in decision-making." *Deutsch v. Wolf*, 994 S.W.2d 561, 567 (Mo. banc 1999). "[W]hen a settlor vests sole discretion in a matter in a trustee, and supplies no objective standard by which to evaluate the reasonableness of his conduct, a court must not interfere unless the trustee, in exercising his power, willfully abuses his discretion or acts arbitrarily, fraudulently, dishonestly or with an improper motive." *In the Matter of Heisserer*, 797 S.W.2d 864, 870 (Mo. App. 1990).

The trust agreement set up by the settlors in this case most certainly favored paying income and principal to the settlors during their lifetime over preserving assets for surviving beneficiaries after the death of both settlors. According to the terms of the trust, Grafton had the discretion to distribute income and principal to himself as a settlor and that discretion was binding upon all persons interested in the trust.

Fay attempts to rely on section 4(j) of the trust as support for her argument that Lloyd Grafton was prohibited from conveying the property back to himself. Section 4(j) says:

Notwithstanding any other provisions of the Trust Agreement, in no event shall any portion of the principal or income of the trust revert or be distributed to the Settlors, or either of them, or to the estate of either, be applied or distributed in a matter which satisfies, discharges or mitigates any legal obligation (including an obligation of support) of the Settlors or either of them, or otherwise be used or applied for the benefit of the Settlors, or either of them.

8

This provision, however, does not apply when a trustee pays a settlor income and/or principal of the trust. It merely prohibits the trustee from applying income and/or principal of the trust to satisfy any legal obligation owed by the Settlor. To read this as Fay suggests would prohibit the settlors from receiving any benefit under the trust. This clearly was not the intent of the settlors as evidenced by the above quoted provisions in section 3(b) of the trust. "In determining the meaning of a trust provision, the paramount rule of construction is that the settlor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole." *Hudson v. UMB Bank, N.A.*, 447 S.W.3d 714, 721 (Mo. App. 2014) (quoting *First Nat'l Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 652 (Mo. 1962)). Section 3(b) (2) clearly states: "The Trustee may pay to or apply for the benefit of either or both Settlors all or any part of the principal as tahe (sic) Trustee may determine in its discretion."

Moreover, the stated purpose of the trust was "to maintain the assets of Lloyd Grafton, Inc., and Grafton Farms, Inc., as a single farming operation as long as financially reasonable[.]" Lloyd Grafton testified at trial that it was no longer financially reasonable to continue operating Lloyd Grafton, Inc., and Grafton Farms, Inc., as a "single farming operation" due to conflicts and disputes between himself, as acting president of Lloyd Grafton, Inc., and Fay, as acting president of Grafton Farms, Inc. The circuit court found that Fay provided no evidence establishing that the decision to remove the shares of Lloyd Grafton, Inc., was not financially reasonable.

We acknowledge that the circuit court did not explicitly state in its judgment that it was not financially reasonable to continue operating the two farms as a single farming operation. However, because the parties did not request findings of fact, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c). Thus, we presume that the circuit court found that operating the two

9

farms as one farming unit was no longer financially reasonable. Indeed, the evidence at trial supported such finding. Lloyd Grafton testified that he did not trust Fay, and Fay testified that she did not trust her father. Given their distrust of one another and the fact that Fay is President of Grafton Farms, Inc., and Lloyd Grafton is President of Lloyd Grafton, Inc., it is most certainly understandable that it would no longer be financially reasonable to continue operating Lloyd Grafton, Inc., and Grafton Farms, Inc., as a "single farming operation."

Because Grafton did not ultimately revoke the trust and because he has the discretion to remove some but not all assets from the trust, the circuit court did not erred in refusing to remove Lloyd Grafton as trustee of the trust. Fay's contention fails.

In her third point on appeal, Fay asserts that the circuit court erred in approving Lloyd Grafton's revocation of trust and the subsequent transfer of the shares of Lloyd Grafton, Inc., to himself without consideration of the "ascertainable standard"[4] as set forth in section 456.8-814, RSMo Cum. Supp. 2013. Section 456.8-814 provides in part:

> 1. Notwithstanding the use of such terms as "absolute," "sole," or "uncontrolled," in the exercise of discretion under an ascertainable standard, the trustee shall exercise such discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries.
>
> 2. Subject to subsection 4 of this section, and unless the terms of the trust expressly indicate that a rule in this subsection does not apply:
>
> (1) *a person other than a settlor who is a beneficiary and trustee of a trust that confers on the trustee a power to make discretionary distributions to or for the trustee's personal benefit may exercise the power only in accordance with an ascertainable standard*[.]

---

[4]Section 456.1-103(2), RSMo Cum. Supp. 2013, defines "ascertainable standard" as "a standard relating to an individual's health, education, support, or maintenance within the meaning of Section 2041(b)(1)(A) or Section 2541(c)(1) of the Internal Revenue Code[.]"

The ascertainable standard set forth in section 456.8-814 does not apply when the trustee is also the settlor. The trust gives Lloyd Grafton as trustee of the trust the discretion to pay all or part of the principal to himself as a settlor without an ascertainable standard being applied. Fay's contention is without merit.[5]

In her final point, Fay contends that the circuit court erred in not terminating all income and benefits to Lloyd Grafton and holding him subject to the no-contest clause of the trust. Section 7(i) of the trust provided:

> If any beneficiary under this Trust, in any manner, directly or indirectly, contests or attack this Trust or any of its provisions, the share or interest of that beneficiary in this Trust shall be revoked and of no force or effect, and such beneficiary's share or interest shall be distributed in the manner provided herein as if the contesting beneficiary had predeceased both Settlors without issue.

"In reviewing the applicability of forfeiture provisions or 'no-contest' clauses, courts are to consider the facts of the particular case, and those facts are to be considered and applied with 'a careful regard for the phrasing or language of the no-contest or forfeiture clause; and, having in mind that forfeitures are not favored by the law.'" *Chaney v. Cooper*, 954 S.W.2d 510, 519 (Mo. App. 1997) (quoting *Cox v. Fisher*, 322 S.W.2d 910, 914 (Mo. 1959)). "'A no-contest or forfeiture provision is to be enforced where it is clear that the trustor (or testator) intended that the conduct in question should forfeit a beneficiary's interest under the indenture (or will).'" *Chaney*, 954 S.W.2d at 519 (quoting *Cox*, 322 S.W.2d at 914).

The no-contest clause does not appear to include actions by the settlor. The statement in the clause that a beneficiary's share would be distributed "as if the contesting beneficiary had

---

[5]Fay makes the argument that the ascertainable standard should apply at least to one-half of the transfers of the stock in Lloyd Grafton, Inc., since half of the stock "should have gone to Dorothy Grafton, deceased former spouse and settlor." Section 456.8-814, however, does not state that the ascertainable standard should apply if property is placed in a trust by joint settlors.

11

predeceased both Settlors without issue" is illogical when the beneficiary is also one of the settlors. Moreover, as we have already concluded, the trust was not ultimately modified or revoked by Lloyd Grafton. The trust remains as originally drafted and with no changes or amendments.

We, therefore, affirm the circuit court's judgment.


/s/ JAMES EDWARD WELSH
James Edward Welsh, Presiding Judge


All concur.